Froessel, J. (concurring).
The thoughtful and thorough opinion written at Special Term and its review of the relevant history and the authorities, culminating in its order of March 17, 1961, renders extended discussion unnecessary.
We are not here concerned with the statements of the Board of Regents or of the local school board as to their motives or purposes in the eventual promulgation of the challenged recitation.
The narrow question presented is: Do the Federal and State Constitutions prohibit the recitation by children in our public schools of the 22 words acknowledging dependence upon Almighty God, and invoking His blessing upon them, their parents and teachers, and upon our country? To say that they do seems to me to stretch the so-called separation of church and State doctrine beyond reason.
History and common experience teach us that the perception of a Supreme Being, commonly called God, is experienced in the lives of most human beings. Some, it is true, escape it, or think they do for a time. In any event, that perception is manifest, independent of any particular religion or church, and has become the foundation of virtually every recognized religious faith — indeed, the common denominator. One may earnestly believe in God, without being attached to any particular religion or church. Hence a rule permitting public school children, willing to do so, to acknowledge their dependence upon Him, and to invoke His blessings, can hardly be called a “ law respecting an establishment of religion ” or “ prohibiting the free exercise thereof ’ ’ in transgression of the First Amendment, which in nowise prohibits the recognition of God, or laws respecting such recognition.
The challenged recitation follows the pledge of allegiance, which itself refers to God. School children are permitted to sing “ America ”, the fourth stanza of which is indeed a prayer, invoicing the protection of “God”, “Author of Liberty”.
*183 The preamble to our State Constitution, which is taught in our public schools, provides: “ We the People of the State of New York, grateful to Almighty God for our Freedom”. Virtually every State Constitution in the United States, as well as the Declaration of Independence, contains similar references. To say that such references, and others of like nature employed in the executive, legislative and judicial branches of our Government (see Zorach v. Clauson, 343 U. S. 306, at pp. 312-313), unrelated to any particular religion or church, may be sanctioned by public officials everywhere but in the public school room defies understanding.
As Mr. Justice Douglas said, in the Zorach case (supra, at p. 313), in holding that the New York City released time program does not violate the First Amendment, ‘ ‘ We are a religious people whose institutions presuppose a Supreme Being. We guarantee the freedom to worship as one chooses. We make room for as wide a variety of beliefs or creeds as the spiritual needs of man deem necessary. We sponsor an attitude on the part of government that shows no partiality to any one group and that lets each flourish according to the zeal of its adherents and the appeal of its dogma.” Here no partiality is shown, nor are classrooms being turned over to religious instructors as in McCollum v. Board of Educ. (333 U. S. 203). Any effort of a particular group to promote its own beliefs, doctrines, tenets and dogma must be carried on outside the public school, and any law to the contrary would violate the First Amendment. (McCollum v. Board of Educ., supra.)
As we see it, then, the challenged recitation was rightly upheld. It is not compulsory, is clearly nonsectarian in language, and neither directly nor indirectly even suggests belief in any form of organized or established religion. It permits each child to express gratitude to God and to invoke His blessing, to be steadfast in the faith of his acceptance if he has one; it compels no one, directly or indirectly, to do anything, if that be his or his parents’ wish. All remain free, and thus we do not show preference as between “ those who believe in no religion ” and “ those who do believe ” (Zorach v. Clauson, supra, p. 314).
The orders appealed from should be affirmed, without costs.
Burke, J. (concurring). I concur in the opinions of Chief Judge Desmond and Judge Froessel. The dissenting opinion *184 not only inadvertently distorts the purposes of the First Amendment, but is also self-contradictory. The First Amendment, it admits, specifically forbids any kind of monism in respect to religion. The amendment, it concedes, encourages diverse religious tenets. But the opinion reads into the amendment an attempt to compel conformity in the field of education—in other words, a ‘ ‘ compulsory unification of opinion ’ ’ in all school boards to totally reject any religious element in education and banish it from the schools. This, of course, would force on the children a culture that is founded upon secularist dogma.
This interpretation rests on a misunderstanding. There is no language in the amendment which gives the slightest basis for the interpolation of a Marxist concept that mandates a prescribed ethic. According to the opinion, the separation of church and State which was intended to encourage religious interests among our people would become the constitutional basis for the compulsory exclusion of any religious element and the consequent promotion and advancement of atheism. It is not mere neutrality to prevent voluntary prayer to a Creator; it is an interference by the courts, contrary to the plain language of the Constitution, on the side of those who oppose religion.